125 P.3d 220 (2005)
130 Wash.App. 862
In re the DEPENDENCY OF A.K., A Minor Child.
In re the Dependency of M.H.O., A Minor Child.
In re the Dependency of Y.H., A Minor Child.
Nos. 23018-0-III, 23211-5-III, 23253-1-III, 23252-2-III.
Court of Appeals of Washington, Division Three.
December 20, 2005.
Reconsideration Denied February 2, 2006.
*222 Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Appellant.
Timothy S. Hamill, Office of the Attorney General, Yakima, WA, for Respondent.
SCHULTHEIS, J.
¶ 1 With this opinion we address consolidated cases of dependent juveniles, A.K., M.H.-O., and Y.H., who were sentenced to detention under the court's inherent contempt power. Each juvenile was found in contempt of court several times for running away from court-ordered placement. The substantive issues on appeal are whether and how the court may exercise its inherent contempt authority to exceed the seven-day detention allowed under chapter 13.34 RCW.
¶ 2 We conclude that the juvenile court properly imposes a determinate period of detention under its inherent contempt authority only when it finds that the statutory remedy is inadequate to meet the juvenile's needs and that a different period of detention is necessary. This exercise of inherent contempt authority must satisfy due process. Because we find that one of the inherent contempt disposition orders here was not supported by specific findings, and that another order violated due process, those orders *223 are vacated. We affirm the remaining two orders of inherent contempt because they are supported by sufficient findings and satisfy due process.

CONTEMPT OF COURT AND JUVENILE DISOBEDIENCE OF PLACEMENT ORDERS
¶ 3 Contempt of court is intentional disrespectful behavior toward the court, disobedience of a lawful court action, or refusal to participate in the court process. RCW 7.21.010(1). The contempt statutes adopted in 1989 distinguish between two general types of contempt sanctions: remedial and punitive. RCW 7.21.010. A remedial sanction is imposed to coerce performance of "an act that is yet in the person's power to perform." RCW 7.21.010(3). A punitive sanction punishes a past contempt "for the purpose of upholding the authority of the court." RCW 7.21.010(2). The remedial sanction is imposed for civil contempt and the punitive sanction is imposed for criminal contempt. In re Interest of Rebecca K., 101 Wash.App. 309, 314, 2 P.3d 501 (2000).
¶ 4 Even a contempt sanction that involves detention remains coercive and remedial if the contemnor can purge the contempt and obtain release. In re Interests of M.B., 101 Wash.App. 425, 439, 3 P.3d 780 (2000). The opportunity to purge effectively places the keys of the prison in the contemnor's pocket. Id. On the other hand, a determinate period of detention without an opportunity to purge is usually considered punitive and criminal. Id. To comport with due process, the court must afford the contemnor facing punitive contempt sanctions the same due process rights afforded other criminal defendants. Id. at 439-40, 3 P.3d 780.
¶ 5 The juveniles here were found in contempt of dependency placement orders. RCW 13.34.165(1) provides that a party who fails to comply with a dependency order may be found in civil contempt of court "as provided in RCW 7.21.030(2)(e)." This latter subsection authorizes a "remedial sanction" of "commitment to juvenile detention for a period of time not to exceed seven days." RCW 7.21.030(2)(e). On several occasions, the juvenile court found that these dependent juveniles violated placement orders, found them in contempt, and imposed remedial sanctions under RCW 13.34.165. Yet, soon after the juveniles purged contempt by writing essays or participating in other affirmative actions, they ran away again. The juvenile court eventually concluded that the statutory scheme did not provide an adequate remedy and decided to resort to its inherent contempt power.
¶ 6 All constitutional courts are vested with independent inherent power to punish violations of court orders. Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); State v. Ralph Williams' N.W. Chrysler Plymouth, Inc., 87 Wash.2d 327, 335, 553 P.2d 442 (1976). This inherent power may not be nullified or restricted by statute. M.B., 101 Wash.App. at 452, 3 P.3d 780; State v. Norlund, 31 Wash.App. 725, 729, 644 P.2d 724 (1982). "But neither may courts deviate from the statutory scheme unless the statutory powers are in some specific way inadequate." M.B., 101 Wash.App. at 452, 3 P.3d 780. As noted in Norlund, the inherent contempt power must be exercised with caution and within narrow limits: "Only under the most egregious circumstances should the juvenile court exercise its contempt power to incarcerate a status offender in a secure facility. If such action is necessary, the record should demonstrate that all less restrictive alternatives have failed."[1] 31 Wash.App. at 729, 644 P.2d 724.
¶ 7 In M.B., Division One of this court recently addressed contempt detention periods that were longer than the seven-day statutory detention limit prescribed by chapter 13.32A RCW (affecting minors found to be at-risk-youth or children in need of services) and chapter 28A.225 RCW (affecting truant minors). Amicus argued in M.B. that the juvenile court had the right to rely on its inherent contempt authority rather than on statutorily-based contempt sanctions. 101 Wash.App. at 451, 3 P.3d 780. Division One *224 noted, however, that the juvenile court in those cases did not specifically find that the statutory remedy was inadequate:
On the rare occasion when a juvenile court decides it must disregard the statutory seven-day limit and resort to its inherent contempt powers, the court must enter a finding as to why the statutory remedy is inadequate and articulate a reasonable basis for believing why some other specific period of detention will achieve what seven days will not.
Id. at 453, 3 P.3d 780; see also State v. Boatman, 104 Wash.2d 44, 48, 700 P.2d 1152 (1985) ("before the inherent power of the court can be used, the court must determine that reliance on the statutory basis would be inadequate").
¶ 8 The juvenile court, as a division of the constitutional superior court, is vested with the inherent power to punish for contempt. Bagwell, 512 U.S. at 831, 114 S.Ct. 2552; In re Pers. Restraint of Dalluge, 152 Wash.2d 772, 790, 100 P.3d 279 (2004). As with all constitutional courts, the juvenile court in a dependency proceeding must exercise this power only when necessary under the circumstances of a particular case. To impose a period of detention under its inherent contempt power, the juvenile court judge must enter findings that (1) the period of detention under RCW 7.21.030(2)(e) and RCW 13.34.165(1) is inadequate for specified reasons, and (2) another determinate period of detention is required to achieve what the statutory period could not. M.B., 101 Wash.App. at 453, 3 P.3d 780.
¶ 9 We review an order of contempt for abuse of discretion.[2]In re Pers. Restraint of King v. Department of Social & Health Services, 110 Wash.2d 793, 798, 756 P.2d 1303 (1988). The court's authority to impose an inherent contempt sanction is a question of law, and is therefore reviewed de novo. State v. T.E.C., 122 Wash.App. 9, 25, 92 P.3d 263, review denied, 152 Wash.2d 1012, 106 P.3d 243 (2004). As discussed below, the juvenile court in the current cases found that the statutory civil remedial contempt remedies were not adequate and that another specific period of confinement was necessary to address the juveniles' needs.[3] In one of these cases, however, the court did not make findings with the required specificity.[4]
¶ 10 I. M.H.-O. M.H.-O. is a dependent child who was found in contempt of court several times by April 2004. The Department of Social and Health Services (DSHS) filed a motion in December 2003 asking that M.H.-O. be held in contempt for running away earlier that month. By running, she also missed a hearing scheduled to purge a prior contempt order. DSHS warned M.H.-O.'s counsel that it would ask the court to exercise its inherent contempt powers. She was eventually picked up and in February 2004, the Yakima County juvenile court held a hearing on the contempt motion. M.H.-O. stipulated that she had run away. The commissioner concluded that her promises not to run, repeatedly broken, could no longer be believed, and that a longer *225 period of detention was necessary to break the cycle:
There is reason to believe that an inherent contempt consequence with no purge option could achieve what a purgeable 7 days of civil contempt consequence could not. It will afford [M.H.-O.] a longer period of time to stabilize under the influence of a "home" where she is not on the streets and on the run. It will give her an opportunity to reflect and become more accustomed to a lifestyle which includes school and continuity....
A longer and fixed term of confinement is likely to be coercive in the long run for [M.H.-O.], since she will realize that she can avoid this more significant consequence in the future by ceasing her running behaviors.
Clerk's Papers (CP) (No. 23211-5-III) at 87. Accordingly, the juvenile court commissioner imposed a sentence of 30 days in detention with credit for time served. Her request to purge the contempt was denied. She moved to revise the order on March 4, 2004.
¶ 11 Within days after she was released from an unrelated offender detention in April 2004, M.H.-O. again ran away. As she had on previous runs, she participated in activities that put her at serious risk of harm. On April 9, DSHS filed a motion requesting the juvenile court to exercise its inherent contempt power. M.H.-O. turned herself in on April 12 and the hearing on the motion was held a couple of days later. Before accepting her stipulation that she had run, the commissioner advised her of her rights, including the right to counsel, to remain silent or testify, to offer witnesses, and to proof beyond a reasonable doubt. The commissioner noted that this was the sixth time it had found M.H.-O. in contempt.
¶ 12 Finding that M.H.-O. placed herself at serious risk of harm whenever she ran, the commissioner reluctantly concluded that the remedial sanctions of RCW 13.34.165 were not adequate at that time:
Hopefully [M.H.-O.] will grow out of this phase, before she suffers further serious or irreparable harm. Eventually a civil contempt sanction may have some actual coercive effect for her, particularly if we can get her to participate in [redacted], begin attending school and get stabilized into a pattern of acceptable behavior. However, at this time, the narrow range of options available in a civil contempt setting [is] not having any noticeable effect.
At present, the court is unable to assure the basic safety of [M.H.-O.] without resort to the inherent contempt powers. The legislatively provided tools have proven inadequate.
CP (No. 23211-5-III) at 78. The commissioner also listed several alternatives it had considered before determining that a fixed term of confinement was necessary: (1) asking M.H.-O. to promise to obey court orders in the future (which had been tried and had failed numerous times); (2) letting her avoid detention by doing community service (which had been tried before, but she ran away); (3) confining her for seven days with the purge option as provided by RCW 13.34.165 (which had repeatedly proved ineffective); and (4) allowing her to write purge essays (which had not worked so far).
¶ 13 On April 15, 2004, the commissioner imposed 60 days of detention, with treatment and schooling to meet M.H.-O.'s needs during detention. A hearing date was set for early May, at which time M.H.-O. might be released if she had participated and had progressed in the provided services. She filed a motion for revision of the April 15 contempt order. On May 5, 2004, after the progress hearing, M.H.-O. was released.
¶ 14 M.H.-O.'s motions for revision of the March 1, 2004 and April 15, 2004 inherent contempt orders were heard by the superior court on May 14, 2004 and July 16, 2004 respectively. Finding in both cases that M.H.-O. had received "[c]riminal-like due process," the court concluded that the use of inherent contempt power was appropriate. CP (No. 23211-5-III) at 40; CP (No. 23253-1-III) at 6. The motions to revise the orders were denied in part, the court ordering that any remaining detention time under the orders need not be served. M.H.-O. appeals both supplemental revision orders.
¶ 15 This record establishes that the juvenile court specifically indicated why the statutory *226 remedy was inadequate to address M.H.-O.'s repeated violations of court orders and why the court thought a determinate period of detention without a purge option would be more effective. Accordingly, we conclude that in both proceedings the juvenile court was justified in utilizing its inherent contempt power.
¶ 16 II. Y.H. On several occasions in 2003 and 2004, minor child Y.H. had run from placement during her dependency. She engaged in dangerous activities during these runs, including reported gang activity and criminal behavior. In August and October 2003 and January 2004, the juvenile court commissioner held Y.H. in statutory civil contempt and imposed seven days or fewer of detention, with opportunities to purge contempt by writing essays.
¶ 17 Y.H. again ran from her foster home in February 2004. She was picked up later that month and attended a hearing in March on DSHS's motion for inherent contempt. Unlike A.K. and M.H.-O., Y.H. did not stipulate that she had run in February. Consequently, the juvenile court commissioner conducted a hearing and heard the testimony of such witnesses as Y.H.'s foster mother and her caseworker, who testified that statutory civil contempt was no longer effective. These witnesses and other evidence convinced the court beyond a reasonable doubt that Y.H. had violated its orders by running from placement in February.
¶ 18 The commissioner then turned to the issue of inherent contempt. Based on Y.H.'s record of repeated violations of court orders, numerous opportunities to purge statutory civil contempt sanctions, and many broken promises, the commissioner concluded that the statutory contempt procedure was no longer adequate to coerce Y.H. to comply with placement orders. He also concluded that a determinate sentence under the court's inherent contempt authority would accomplish what the statutory remedy could not:
There is reason to believe that an inherent contempt disposition will likely have coercive effect on [Y.H.]. It will become clear to [Y.H.] that continued future decisions to violate court orders may have much more serious consequences. It will give her a period of time to stabilize without the adverse influences which she seeks while [on] the run....
The stakes are high at this point. [Y.H.] appears headed for a very dangerous life style ... She has been given ample opportunity to amend her ways under the gentle guiding influences of multiple [statutory civil] contempt findings. She has proven resistant to that level of intervention. We are risking a catastrophe with her future if we are unable to formulate an adequate response to her bad choices.
CP (No. 23252-2-III) at 73-74.
¶ 19 Y.H. was sentenced to 30 days in detention as an inherent contempt consequence, with credit for time served. She was not offered an opportunity to purge. She moved to revise the order. Concluding that Y.H. had received "[c]riminal-like due process" and that use of inherent contempt power was appropriate under these facts, the superior court denied in part her motion to revise.[5] CP (No. 23252-2-III) at 5-6. She now appeals this supplemental order on revision.
¶ 20 Y.H.'s order of inherent contempt extensively describes her history of running away, involvement in dangerous activities, multiple statutory remedial contempt orders, and purges of contempt almost immediately followed by running away again. The commissioner concluded that the statutory procedure was no longer adequate to coerce Y.H. to comply with placement orders. These findings specifically address the inadequacy of the remedial contempt sanction under RCW 13.34.165 and why a determinate sentence without a purge option under the inherent contempt power could better address Y.H.'s violations of court orders. We conclude that the juvenile court properly exercised its inherent contempt authority.
¶ 21 III. A.K. On four occasions from 2002 to 2004, A.K. had been found in *227 contempt of court for violating the Yakima County juvenile court's placement orders and running away during her dependency proceeding. While she was on the run, she participated in self-destructive activities. The court imposed community service or up to seven days of detention for each of these violations, with an opportunity to purge by writing an essay, completing community service, or following other court orders. These sanctions were authorized by chapter 13.34 RCW.
¶ 22 During a hearing in January 2004, when A.K. was 15 years old, she was warned that if she violated the court's orders again, DSHS or the court could choose to pursue a determinate sentence under the court's inherent contempt power rather than under chapter 13.34 RCW. A few weeks later, A.K. was again on the run. She was eventually picked up in Montana in April 2004. DSHS then moved the juvenile court to exercise its inherent contempt power to impose detention beyond statutory limits.
¶ 23 At a hearing held on April 16, 2004, A.K. stipulated that she ran away. After a colloquy, the juvenile court commissioner accepted her stipulation and imposed a sentence of 60 days in detention, with counseling and schooling. However, the commissioner also set a hearing date to review A.K.'s case after two weeks to determine her progress. If the court was persuaded at that hearing that A.K. would comply in good faith with the court's orders, she would be released at that time.
¶ 24 On April 30, A.K. was released from detention after the progress hearing. She was warned, however, that if she violated the court's orders, she would again face inherent contempt detention. The juvenile court explained that it was conducting an experiment: using inherent contempt and providing services in detention to address a juvenile's dangerous running behaviors. A.K. filed a notice of appeal on May 11.
¶ 25 A.K.'s inherent contempt disposition order differs from the others. The juvenile court utilized a printed form for this order. One page is captioned "The background information considered by the court, in weighing whether it is necessary to resort to the use of inherent contempt powers, includes the court file and this information." CP (No. 23018-0-III) at 13. What follows is a list of A.K.'s four previous contempt orders and purge options, as well as "[o]ther significant factors," including the facts that she "runs repeatedly, for long periods of time, to a distant place," she engages in dangerous activities, and she ran even after she was warned she might face inherent contempt consequences. CP (No. 23018-0-III) at 13. The pre-printed conclusions are here listed in their entirety:
1. The statutory civil remedial contempt powers, as found at RCW 13.34.165 and 7.21.030(2)(e), and as interpreted by our courts of appeals, do not at present provide an adequate remedy.
2. The statutory criminal contempt powers, as found at RCW 7.21.040[,] are not available in this case. State v. [A.L.H., 116 Wash.App. 158,] 64 P.3d 1262 (2003)[.]
3. There is a reasonable basis for believing that some other specific period of detention will achieve what seven days will not[.] (In re M[.]B. at 101 Wash.App. [at] 454 [3 P.3d 780])[.]
CP (No. 23018-0-III) at 14. A.K. contends the pre-printed form does not satisfy the requirement to make individualized, specific findings that the statutory remedy is inadequate and that the inherent contempt sanction will achieve what the remedial sanction could not.
¶ 26 One of the fears expressed by the court in M.B., 101 Wash.App. at 452, 3 P.3d 780, is the "significant danger ... that the discretionary use of inherent contempt power to deal with runaways will become a systematic response. Such a practice increases the risk of overcrowding as well as the risk that runaways will be housed with criminal offenders." The Yakima County juvenile court's use of a pre-printed form for inherent contempt dispositions suggests that this remedy is at least commonly  if not systematically  considered for runaways. Too frequent use of this option could, in effect, nullify the juvenile remedial contempt statutes. See id. The surest way to guard *228 against the systemization of what is meant to be a rare utilization of the court's inherent contempt power is to require the court to clearly articulate a reasonable basis for believing that the statutory remedy is inadequate and that another specific period of detention is necessary. Id. at 453, 3 P.3d 780.
¶ 27 The pre-printed form for A.K.'s inherent contempt disposition order lists several occasions when she violated court placement orders and purged contempt only to run again. It also indicates that she ran to Montana and participated in unsavory activities. It does not, however, specifically explain why the court finds that the statutory civil remedial contempt sanctions do not provide an adequate remedy. More important, probably, is the lack of explanation why a longer determinate period of detention will accomplish what seven days with a purge option will not. The juvenile court's oral ruling provides no clearer explanation than the pre-printed form. As a matter of law, A.K.'s order does not justify the court's use of inherent contempt power rather than the statutory remedy offered by RCW 13.34.165 and RCW 7.21.030(2)(e). Consequently, her inherent contempt disposition order is reversed.

DUE PROCESS AND THE INHERENT CONTEMPT SANCTION
¶ 28 A court's exercise of its inherent power of contempt  whether civil or criminal  must comport with due process. In re Marriage of Nielsen, 38 Wash.App. 586, 588, 687 P.2d 877 (1984). Because the primary purpose of the juvenile court in the current cases was to punish for repeated violations of court orders, and because the juveniles were not given an opportunity to purge, these proceedings were punitive in nature. Boatman, 104 Wash.2d at 48, 700 P.2d 1152; M.B., 101 Wash.App. at 447, 3 P.3d 780; Nielsen, 38 Wash.App. at 588, 687 P.2d 877. Punitive contempt is a criminal proceeding; consequently, the contemnor is afforded criminal due process protections. M.B., 101 Wash.App. at 453, 3 P.3d 780. These protections include notice of the charges, a reasonable opportunity to respond, the presumption of innocence, the right to have guilt proved beyond a reasonable doubt, the right to refuse to testify, the right to call witnesses and to cross-examine, the assistance of counsel, and the right to a trial before an unbiased judge. Young v. United States ex rel. Vuitton et Fils S. A., 481 U.S. 787, 798-99, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Notice
¶ 29 DSHS initiated these cases with motions for inherent contempt sanctions. The juveniles contend their due process rights were violated in part because they were convicted of criminal contempt without being properly charged. They cite three Washington cases involving criminal contempt proceedings against juveniles to support this argument. In State v. A.L.H., 116 Wash.App. 158, 164, 64 P.3d 1262 (2003) (Division Two), Rebecca K., 101 Wash.App. at 317, 2 P.3d 501 (Division Three), and In re Interest of A.D.F., 88 Wash.App. 21, 26, 943 P.2d 689 (1997) (Division One), all three divisions of the Court of Appeals concluded that a court cannot impose a punitive sanction for contempt unless the State initiates the process by filing a criminal information. None of the orders imposing punitive sanctions on the juveniles here were initiated by a criminal information. However, the current cases may be distinguished from A.L.H., Rebecca K., and A.D.F. on one important basis: each of the latter cases involved statutory contempt proceedings rather than the court's exercise of inherent contempt power.
¶ 30 Pursuant to RCW 7.21.040(2)(a), an action to impose a punitive sanction for contempt must be commenced by a complaint or information filed by the prosecuting attorney or city attorney. The juvenile courts in A.L.H., 116 Wash.App. at 164, 64 P.3d 1262; Rebecca K., 101 Wash.App. at 317, 2 P.3d 501; and A.D.F., 88 Wash.App. at 26, 943 P.2d 689, imposed determinate sentences based on past violations of at-risk-youth *229 (ARY) orders and without a purge option.[6] None of the contempt actions were initiated by criminal complaints or informations. As stated in A.L.H., 116 Wash.App. at 163-64, 64 P.3d 1262, the State and court have two statutory options for addressing violations of ARY orders:
(1) If contempt charges are brought against a juvenile in violation of an ARY order, the State must seek civil contempt remedies, RCW 7.21.030(2)(e); and (2) any juvenile offender in contempt of court on some other basis may be subject to criminal, civil, or summary contempt under the general contempt statutes.
The appellate courts concluded that even if the juveniles had been found in contempt of court on a basis other than violation of the ARY order, the proceedings that resulted in their punitive sanctions did not comply with the statutory requirement of a filed complaint or information. A.L.H., 116 Wash. App. at 164, 64 P.3d 1262; Rebecca K., 101 Wash.App. at 317, 2 P.3d 501; A.D.F., 88 Wash.App. at 26, 943 P.2d 689.
¶ 31 Here, however, the juvenile court did not conduct statutory contempt proceedings. The court's inherent power to find contempt and punish violations of its orders is not dependent on statute. See, e.g., Yamaha Motor Corp. v. Harris, 29 Wash.App. 859, 866, 631 P.2d 423 (1981) (the court's use of inherent contempt power is not limited by the punishments prescribed by the civil contempt statute). See also In re G.B., 88 Ill.2d 36, 41, 430 N.E.2d 1096, 58 Ill.Dec. 845 (1981) (the court's power to punish for contempt does not depend on constitutional or legislative grant). Although a contemnor in a criminal contempt proceeding is entitled to the due process rights of any criminal defendant, an inherent contempt proceeding is not subject to the criminal contempt statute's specific requirement that the proceeding be initiated by a criminal information. RCW 7.21.040(2)(a).
¶ 32 Due process requires notice that is reasonably calculated to apprise a party of the proceedings that affect him or her. Ralph Williams', 87 Wash.2d at 335, 553 P.2d 442. Each juvenile here was served with a motion seeking punitive sanctions under the juvenile court's inherent contempt authority. This notice was reasonably calculated to inform the juveniles of the nature of the proceedings against them. Accordingly, this notice comported with due process.

Remaining Due Process Rights
¶ 33 Although each juvenile here received sufficient notice of the inherent contempt proceedings, we find that the juvenile court addressed their additional due process rights with varying degrees of success.
¶ 34 I. M.H.-O. At a hearing held in February 2004 on DSHS's motion for contempt, the juvenile court advised M.H.-O. that the court was not bound by the statutory detention maximum if it used its inherent contempt power. The transcript of the actual inherent contempt hearing held later that month does not indicate that the juvenile court specifically advised M.H.-O. of her due process rights. Her counsel argued that the punitive sanction M.H.-O. faced entitled her to criminal due process protections. But when asked what rights had not been offered to her client, counsel stated only that the prosecutor should have filed an information to commence proceedings. The issue of notice is addressed above. M.H.-O.'s attorney told the commissioner that M.H.-O. might stipulate to the finding of contempt, "in light of the Department's offer to recommend 30 days." CP (No. 23211-5-III) at 86. The court cautioned her, however, that it was not bound by DSHS's recommendation. Even so, M.H.-O. decided to stipulate to the fact that she ran away in violation of the court's order.
¶ 35 M.H.-O.'s stipulation was made without advisement of her due process rights, in particular her rights to a trial with witnesses and proof beyond reasonable doubt. Without a colloquy to determine whether M.H.-O. understood the rights she was waiving, her stipulation to the violation of the court's orders cannot be held to be knowing and *230 voluntary. State v. S.M., 100 Wash.App. 401, 413, 996 P.2d 1111 (2000). Consequently, the March 1, 2004 inherent contempt disposition order based on this stipulation violated due process and is vacated.
¶ 36 M.H.-O.'s second order finding inherent contempt, filed April 15, 2004, does not suffer from the same due process infirmity. At the hearing on DSHS's motion for contempt, the commissioner warned M.H.-O. that she again faced detention beyond the civil remedial sanction. Before accepting M.H.-O.'s stipulation to the fact that she ran away, the commissioner advised her of the full panoply of due process rights. She told the court she had discussed those rights with counsel and understood them. The commissioner then conducted a colloquy, asking M.H.-O. if she had questions, if she stipulated that she ran as alleged, and if she agreed to stipulate because someone threatened her or made her promises. She answered no to the first and third questions and yes to the second question. After reviewing the affidavit of facts and M.H.-O.'s statements, the court concluded there was a reasonable basis to accept her stipulation. This procedure comported with due process.
¶ 37 II. Y.H. Unlike the other juveniles before this court, Y.H. had a juvenile court hearing on the allegation that she violated the court's placement order. At this hearing, she was afforded the rights to counsel, to present and cross-examine witnesses, to decline to testify, to the presumption that she did not violate the order, and to proof beyond a reasonable doubt that she did violate the order. The record supports the superior court's finding that "[c]riminal-like due process, as required, was granted to the child." CP (No. 23252-2-III) at 6.
¶ 38 III. A.K. At a show cause hearing for an earlier contempt action, the juvenile court commissioner warned A.K. that if she again violated the court's orders, she could face a longer determinate sentence that would not be limited by the civil remedial statutes. A.K.'s subsequent violation of placement orders was the subject of her inherent contempt disposition order.
¶ 39 During her hearing on inherent contempt, the commissioner explained that she was facing a different kind of proceeding. The commissioner read off her due process rights: the right to representation by a lawyer at public expense; the right to a public and speedy trial; the right to testify, cross-examine, or remain silent at trial; the presumption of innocence (or, as the court explained to A.K., the presumption that you did not violate the order); proof beyond reasonable doubt of the violation; the court's determination whether it is necessary to resort to inherent contempt rather than civil contempt; and the right to revision or appeal of the order. Although A.K. stated she understood her rights, the commissioner explained that the issues were complicated and directed her to discuss them with her lawyer. A.K. then said she did not understand the difference between remedial or coercive purposes of her consequences. The commissioner answered that he did not expect her to understand and advised her to let the court know if she still did not understand after talking to her attorney.
¶ 40 At the hearing on inherent contempt held the next day, the commissioner gave A.K. copies of the caseworker's affidavits that stated A.K. ran from placement on two recent occasions. The commissioner then explained that detention under the inherent contempt powers was discretionary with the court and could last up to her eighteenth birthday, without an opportunity to purge. After the commissioner again advised A.K. of her rights, she said she understood them. She then stipulated that she ran away as alleged in the caseworker's affidavits. The commissioner accepted her stipulation following a colloquy to determine whether it was voluntary.
¶ 41 Because A.K. faced punitive contempt sanctions, her stipulation to the violations of the orders was in effect a guilty plea. See M.B., 101 Wash.App. at 439-40, 3 P.3d 780 (a juvenile contemnor facing punitive sanctions is entitled to the same due process rights as other criminal defendants). To comport with due process, a guilty plea must be made intelligently and voluntarily. S.M., 100 Wash.App. at 413, 996 P.2d 1111. The juvenile court here carefully advised A.K. of her due process rights, the nature of the inherent *231 contempt motion, and the consequences of her stipulation to the violations of the placement orders. A.K.'s stipulation to the facts underlying the finding of contempt was knowing and voluntary. We find no due process violation.

CONFLICT OF INTEREST AND SEPARATION OF POWERS
¶ 42 The juveniles additionally argue that the attorney general was an interested party in the contempt actions and therefore should not have served as prosecutor due to a conflict of interest. Although the attorney general represented DSHS in all of the contempt proceedings against the juveniles, he did not represent what could be termed "private interests." The juveniles provide no argument that he served in anything but a public capacity. As a public prosecutor, his responsibility was to seek justice, not a private agenda. Young, 481 U.S. at 803, 107 S.Ct. 2124. Moreover, although DSHS moved for contempt, it was the juvenile court's choice to exercise its inherent contempt power. The juveniles contend the court's involvement in the exercise of this choice violated the separation of powers doctrine.
¶ 43 The division of governmental powers into the executive, legislative, and judicial is essential to the maintenance of a republican form of government. Wash. State Bar Ass'n v. State, 125 Wash.2d 901, 906-07, 890 P.2d 1047 (1995). Although the separation of powers doctrine is designed to allow the three branches to maintain effective control over their respective affairs, it does not require the branches to be "`hermetically sealed off from one another.'" Spokane County v. State, 136 Wash.2d 663, 667, 966 P.2d 314 (1998) (quoting Carrick v. Locke, 125 Wash.2d 129, 135, 882 P.2d 173 (1994)). "Harmonious cooperation among the three branches is fundamental to our system of government." Zylstra v. Piva, 85 Wash.2d 743, 750, 539 P.2d 823 (1975). We ask not whether two branches engage in activities that coincide, but rather "whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another." Id. As stated in Young, 481 U.S. at 796, 107 S.Ct. 2124, "[c]ourts cannot be at the mercy of another branch in deciding whether [contempt] proceedings should be initiated." The court's inherent ability to punish disobedience of its orders does not threaten the integrity or invade the prerogative of the executive or legislative branches. Id.

JUVENILE RIGHT TO A JURY TRIAL
¶ 44 The juveniles additionally assert that they were entitled to a jury trial of their contempt actions. It has been long settled in Washington that juveniles have no right to a jury trial under either the Washington state or the federal constitution. State v. Schaaf, 109 Wash.2d 1, 16, 743 P.2d 240 (1987); McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). A jury trial in adult criminal contempt cases is considered necessary to protect against the arbitrary exercise of official power. Bagwell, 512 U.S. at 831-32, 114 S.Ct. 2552. The juveniles contend they are at least as deserving of the same protection. Specifically, they contend recent United States Supreme Court cases call into question the denial of their right to a jury trial. These cases, Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), examined the historical foundation of constitutional provisions to determine the intent of the constitution's drafters.
¶ 45 Recently, Division One addressed this issue in State v. Tai N., 127 Wash.App. 733, 113 P.3d 19 (2005), petition for review filed (Wash. July 14, 2005) (No. 77351-3). Tai N. concluded that "[j]uvenile adjudicatory proceedings have never been equated with a `criminal prosecution' for purposes of the Sixth Amendment." Id. at 738, 113 P.3d 19. Additionally, when the Washington Supreme Court in Schaaf examined the Gunwall factors[7] to determine whether a jury trial was guaranteed under the state constitution, it noted that the territorial lawmakers did *232 not anticipate enactment of a separate juvenile justice system. Schaaf, 109 Wash.2d at 14, 743 P.2d 240. Schaaf concluded that "[i]t does no violence to our state's common law history to give credence to a 70-year-old legal system that was nonexistent in our territorial days." Id.
¶ 46 A petition for review has been filed for Tai N. Because the juveniles' argument challenges Schaafa decision binding on this court  their argument is better addressed to the state Supreme Court.

SENTENCING
¶ 47 M.H.-O. and A.K. were sentenced to 60 days of detention for contempt. They now contend these were manifest injustice dispositions imposed without the requisite findings of the court to justify such a disposition. Their argument may be summarized as follows: A juvenile's standard range is determined by the offense category in the schedule provided in RCW 13.40.0357. Contempt is not specifically listed in the offense category table. The maximum penalty for the crime of contempt is one year. RCW 7.21.040(5). A gross misdemeanor is a crime with a maximum penalty of one year. RCW 9A.04.040. Pursuant to RCW 13.40.0357, an unlisted juvenile offense that is equivalent to an adult gross misdemeanor is a "D" offense. A "D" offense, regardless of the number of prior adjudications, is punishable only by local sanctions, defined as 0-30 days of confinement, 0-12 months of community supervision, 0-150 hours of community restitution, or a $0-$500 fine. RCW 13.40.020(16).
¶ 48 A juvenile court adjudicating criminal charges may impose a disposition outside the standard range as long as it finds that a disposition within the standard range would work a manifest injustice. RCW 13.40.0357, .160(2); State v. Moro, 117 Wash. App. 913, 918, 73 P.3d 1029 (2003). A manifest injustice disposition is one that would result in a serious danger to society in light of the purposes of the Juvenile Justice Act of 1977, chapter 13.40 RCW, or that would impose an excessive penalty on the juvenile. Moro, 117 Wash.App. at 918, 73 P.3d 1029 (citing State v. M.L., 134 Wash.2d 657, 660, 952 P.2d 187 (1998)). Here, the juveniles were not charged with an offense or even an unlisted offense under the juvenile justice act. Their detention was ordered under the court's inherent power to punish for violations of its orders. This power may not be restricted by statute. M.B., 101 Wash.App. at 452, 3 P.3d 780.
¶ 49 Our review is for abuse of discretion, subject to constitutional prohibitions against cruel and unusual punishment. Keller v. Keller, 52 Wash.2d 84, 90, 323 P.2d 231 (1958); State ex rel. Shafer v. Bloomer, 94 Wash.App. 246, 250, 973 P.2d 1062 (1999). The juvenile court ordered A.K. and M.H.-O. to participate in school and in mental health and treatment services while they served 60 days of detention. In M.H.-O.'s case, the court indicated in the order that it would "seek to use this unique opportunity to give [M.H.-O.] the help she presently needs." CP (No. 23211-5-III) at 80. Considering the rehabilitative and treatment purposes of the detention ordered for these juveniles, and the juvenile court's determination that the statutory sanctions could not meet their needs, we find no abuse of discretion.

CONCLUSION
¶ 50 To summarize, A.K.'s order on inherent contempt does not specifically state the reasons why the juvenile court decided that the statutory civil remedial sanctions were inadequate and that a determinate sentence without the opportunity to purge would better address A.K.'s contempt. Accordingly, her order is vacated. One of M.H.-O.'s orders of contemptthe one filed on March 1, 2004was based on a stipulation of facts entered without due process protections. This order is also vacated. The remaining orders were properly based on the juvenile court's inherent contempt power and comported with due process.
¶ 51 Affirmed in part and vacated in part. The July 23, 2004 supplemental order on revision for M.H.-O. (No. 23253-1-III) and the July 6, 2004 supplemental order on revision for Y.H. (23252-2-III) are affirmed. The April 16, 2004 inherent contempt disposition order for A.K. (No. 23018-0-III) and the *233 July 6, 2004 supplemental order on revision for M.H.-O. (No. 23211-5-III) are vacated.
WE CONCUR: SWEENEY, A.C.J., and BROWN, J.
NOTES
[1] Norlund was decided in 1982, before RCW 7.21.030 authorized detention of juveniles for up to seven days as a remedial sanction for contempt.
[2] Our review is of A.K.'s direct appeal from the commissioner's order and of the superior court's decisions on M.H.-O.'s and Y.H.'s motions for revision from the commissioner's orders. RCW 2.24.050; State v. Ramer, 151 Wash.2d 106, 113, 86 P.3d 132 (2004).
[3] On revision of M.H.-O's two contempt orders and Y.H.'s contempt order, the superior court adopted the findings and conclusions of the juvenile court commissioner. Consequently, our review in all of these cases is of the findings and conclusions entered by the commissioner. RCW 2.24.050; Ramer, 151 Wash.2d at 113, 86 P.3d 132.
[4] Each of these juveniles has served the term of disposition imposed for contempt. Consequently these appeals are technically moot because we cannot provide effective relief. In re Cross, 99 Wash.2d 373, 376-77, 662 P.2d 828 (1983); M.B., 101 Wash.App. at 432, 3 P.3d 780. We may review a moot case, however, if it "involves a matter of continuing and substantial public interest." M.B., 101 Wash.App. at 432, 3 P.3d 780. Judging by the number of similar cases arising from Yakima County recently, the juvenile court's exercise of inherent contempt authority to force compliance with placement orders is likely to recur. Clarification of the court's authority to exercise inherent contempt power in proceedings already defined and limited by statute is a matter of continuing public interest, justifying review.
[5] Because Y.H. was again on the run, the court amended the inherent contempt order to allow reconsideration of the remaining time to spend in detention once Y.H. was apprehended.
[6] The ARY contempt statute, like the dependency contempt statute in the current cases, provides that the court is limited to imposition of remedial sanctions, including up to seven days of confinement. RCW 13.32A.250(2), (3). Compare RCW 13.34.165(1), (2) (dependency contempt action).
[7] State v. Gunwall, 106 Wash.2d 54, 61-62, 720 P.2d 808 (1986) enumerates the criteria used in determining whether our state constitution gives broader rights than does the federal constitution.