[No. 23458-1-II.    Division Two.    April 14, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. S.M.,
*Appellant*.

*Brady R. Johnson*, for appellant.

*James J. Stonier, Prosecuting Attorney*, and *Melanie Paige Romo, Deputy*, for respondent.

SEINFELD, J. — S.M. pleaded guilty as charged to committing three counts of first degree child rape. He later moved to withdraw his plea, arguing ineffective assistance of counsel. Because S.M.'s attorney delegated the task of advising S.M. to his wife/legal assistant and because her advice was both incomplete and misleading, we agree with S.M.'s contentions and, thus, reverse and remand.

## FACTS

On December 4, 1996, the State charged S.M. with three counts of rape of a child in the first degree.[1] The State alleged that in the spring of 1994, when S.M. was 12 years old, he had sexual intercourse with his then 9-year-old brother. The Cowlitz County Juvenile Court appointed counsel for S.M.

On December 9, S.M., accompanied by his mother and by a school counselor friend, went to appointed counsel's office where they met with counsel's wife who also worked as his legal assistant. At the end of this meeting, S.M. signed a statement of juvenile on plea of guilty, which stated: "In Cowlitz County in the Spring of 1994, I had sexual contact with my Brother who is age 10 in 1994. It happened three times."

Eight days later, on December 17, S.M. appeared before the juvenile court for entry of his guilty plea. His only contact with appointed counsel before entry of the plea was a brief meeting immediately before the court hearing. Counsel did not discuss the substance of the plea; he merely explained the hearing procedure.

At the hearing, the prosecutor informed the court that the charges involved anal intercourse with S.M.'s brother. After the court asked trial counsel a few brief questions about the ages of the victim and the defendant when the

---

[1]RCW 9A.44.073(1) provides: "A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim."

offenses occurred, the court read the charges. The charges stated that S.M. had engaged in sexual intercourse with a John Doe on three separate occasions. Thereafter, the following colloquy took place:

Judge: First of all, do you know what the word sexual intercourse means?

[S.M.]: Yes, sir.

Judge: And do you know who John Doe is?

[S.M.]: Yes, sir.

Judge: All right. As to count one how do you plea [sic]?

[S.M.]: Guilty.

Judge: As to count two how do you plea [sic]?

[S.M.]: Guilty.

Judge: And as to count three?

[S.M.]: Guilty.

Clerk's Papers at 22.

The juvenile court's only other question of S.M. related to the impact of transferring jurisdiction to Clark County, where S.M. resided. The court then accepted S.M.'s plea.

In February 1998, after retaining new counsel, S.M. moved to withdraw his guilty plea. He claimed that he was not guilty of the offense charged in the information and that the plea was entered without effective assistance of counsel and without an understanding of the effect of the plea or its direct consequences.

In support of his motion, S.M. included his own affidavit and one from his mother. They both stated that appointed counsel was not present when S.M. signed the plea form; that no one had reviewed the plea form with S.M or discussed other options; that S.M. was affirmatively misinformed that he would not have to register as a sex offender if he pleaded guilty; and that S.M. would not have pleaded guilty if he had known he would have to register or that there were other options.

At a subsequent hearing on the motion, the legal assistant testified as to what she told S.M., his mother, and the counselor during her meeting with them. She said that she reviewed the police report and the information, explained the charges, and described the trial process as follows:

> I explain to them that he can go to a trial and that at a trial his brother would be called [by] the prosecutor to testify as to what he had said occurred, and that other people might be called to testify, you know, you sometimes call the police officers, the person that the information that was disclosed to, and that he had the right to have people testify, too, and he can testify and tell the judge that—his side of the story, if he—if he didn't believe that he did what his brother had accused of him, then he could tell the judge his side of the story and the judge would listen to the witnesses and listen to both sides and then decide whether or not he believed one side more than he believed the other side. And then the judge would make his decision.

Report of Proceedings at 30.

On cross-examination, the legal assistant further testified about her explanation of the trial process:

> Q: Okay. Did you explain to him the burden of proof, that he did not have to testify at all and could still be acquitted?

> A: I told him that—I explained to him that he could testify to the Court as to what his position was and what occurred that his brother disclosed and his brother would testify and the judge would made a decision as to which of the parties the judge believed was telling—more likely telling the truth.

> Q: But did you tell him that he didn't have to testify at all and that his refusal to testify could not be held against him in any way?

> A: I told him he didn't have to testify; I don't believe I—I don't know if I told him his refusal would not be held against him.

> Q: Now you said—

A: I don't know if I said that or not.[2]

Q: Okay, you've said a number of times that he could testify if he wanted to and that his brother would testify and the judge would make a decision as to who [sic] he believed more—

A: Um-hum.

Q: Did you talk about the burden of proof beyond a reasonable doubt[?]

A: Well, the way I explained it is that the judge would determine, after listening to everybody, which one he believed was more likely telling the truth than the other.

Q: Did you describe the difference between a preponderance of the evidence, which is what that characterization sounds like, and beyond a reasonable doubt?

A: Not as you state it.

Q: At all?

A: Well, I just—I told him that the judge would listen to the information and if he believed that the brother was telling the truth and that it was more likely that what he was telling the truth was correct, rather than what [S.M.] was saying, the judge would—could find that he was guilty. If the judge believed [S.M.'s] position and the witnesses', he could find [S.M.] not to be guilty.

Report of Proceedings at 42-44.

The legal assistant explained that she paraphrased the plea form when she reviewed it with S.M. because "kids don't generally understand all of the legal[ese] that's contained in the plea form." She testified that, although she did not read the form to him word-for-word, it was her "standard practice" to discuss all the information contained in the form with the defendant.

She also explained to S.M. that if the court found him guilty or if he pleaded guilty, he would have to register as a sex offender, but that if he was given the opportunity to

---

[2]The legal assistant later testified that she did not advise S.M. that a refusal to testify could not be held against him.

participate in the Special Sex Offender Disposition Alternative (SSODA) and successfully completed it, he could go back into court and ask it to discontinue his obligation to register. She said that S.M. stated he knew what he did was wrong and wanted to plead guilty in order to be considered for the SSODA program.

She then told S.M. that his statement on plea of guilty needed to name the county in which the offense occurred, the time period it occurred, what he did, and the name and age of the victim. She testified that when S.M. received the plea form, he "passed through it and signed the—filled in the information that was required and signed" it. She did not review S.M.'s statement after he wrote it, but she opined that the boy understood the charges and the process of pleading guilty.

The school counselor, who was present at the entire meeting between S.M. and the legal assistant, stated that the legal assistant told them that if S.M. successfully completed the SSODA program, he would not have to register as a sex offender, but if he did not, he might have to continue registering for life. The counselor further testified that the legal assistant told S.M. that because he had admitted to the charges, he would have to plead guilty; the counselor did not recall any discussion about the option of going to trial.

Appointed counsel also testified at the hearing. He confirmed that he met with S.M. only once, just before entering the courtroom for the plea hearing, and that he did not review the plea form with S.M., but he merely explained the plea hearing procedure. He also explained that he had reviewed the police report with his legal assistant before her meeting with S.M. and had highlighted the materials he considered "extremely important to be reviewed with the client," including the elements of the crime. He told his legal assistant to find out whether S.M. admitted to doing the things the police report said he did. But he did not give her specific instructions about reviewing the plea form because "she is skilled enough, profes-

sional enough, that she knows what she needs to go through."

On cross-examination, appointed counsel acknowledged that although the record contained references to the victim having told false stories about S.M., he did not investigate the charges. Rather, appointed counsel stated: "Once [S.M.] admitted what he had done, his brother's credibility, particularly when [S.M.] confirmed that what the brother had said was true, there was no reason at that point to do it. This is not an adult criminal charge." Appointed counsel also acknowledged that he did not discuss with S.M. the possibility of pleading to a lesser offense, concluding that under the circumstances, "it would be a waste of time and effort to try to negotiate something less."

The trial court denied S.M.'s motion to withdraw his plea, concluding that the plea form he signed adequately explained the rights he was giving up. S.M. appeals, arguing that he did not receive effective assistance of counsel and did not make a knowing and voluntary guilty plea.

## DISCUSSION

CrR 4.2(f) sets forth the conditions under which a defendant may withdraw a plea of guilty. This rule provides as follows:

> The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice. If the defendant pleads guilty pursuant to a plea agreement and the court determines under RCW 9.94A.090 that the agreement is not consistent with (1) the interests of justice or (2) the prosecuting standards set forth in RCW 9.94A.430-.460, the court shall inform the defendant that the guilty plea may be withdrawn and a plea of not guilty entered. If the motion for withdrawal is made after judgment, it shall be governed by CrR 7.8.[3]

CrR 4.2(f).

---

[3]CrR 7.8(b) provides, in pertinent part:

■ ■ The four indicia of manifest injustice generally recognized by our courts are: (1) denial of effective assistance of counsel; (2) failure of the defendant or one authorized by him to do so to ratify the plea; (3) involuntary plea; and (4) violation of plea agreement by the prosecution. *State v. Taylor* 83 Wn.2d 594, 597, 521 P.2d 699 (1974). We review a trial court's decision on a motion to withdraw a guilty plea for abuse of discretion. *State v. Padilla*, 84 Wn. App. 523, 525, 928 P.2d 1141 (1997).

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

■ S.M. argues that (1) his attorney did not assist him in deciding whether to enter a guilty plea, and (2) much of the assistance he received from the legal assistant was either incorrect or misleading, including the information regarding sex offender registration requirements. We review a claim of ineffective assistance of counsel de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

■ There is a two-part test to establish a claim of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes

---

On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:

(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.6;

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) The judgment is void; or

(5) Any other reason justifying relief from the operation of the judgment.

both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

Under the prejudice prong, the defendant must show " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Lord*, 117 Wn.2d at 883-84 (quoting *Strickland*, 466 U.S. at 697). We start with the presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonably professional judgment. *Lord*, 117 Wn.2d at 883. *Accord State v. Benn*, 120 Wn.2d 631, 665, 845 P.2d 289 (1993). But given the facts here, we do not reach the issue of the adequacy of counsel's assistance until we determine if S.M. received *any* assistance of counsel before deciding to enter his guilty plea.

> The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." This guaranty is made obligatory upon all states because as a provision of the Bill of Rights it is fundamental and essential to a fair trial.

*City of Seattle v. Shaver*, 23 Wn. App. 601, 602, 597 P.2d 935 (1979) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)).

■ "Counsel" as referred to in the Sixth Amendment refers to a person authorized to practice law; it "does not include a lay person." *United States v. Grismore*, 546 F.2d 844, 847 (10th Cir. 1976). The term "practice of law" includes legal advice and counsel and the preparation of legal instruments that secure legal rights. *State v. Hunt*, 75 Wn. App. 795, 802, 880 P.2d 96 (1994).

■ During plea bargaining, counsel has a duty to assist

the defendant "actually and substantially" in determining whether to plead guilty. *State v. Osborne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984); *State v. Stowe*, 71 Wn. App. 182, 186, 858 P.2d 267 (1993). It is counsel's responsibility to aid the defendant in evaluating the evidence against him and in discussing the possible direct consequences of a guilty plea. *State v. Holley*, 75 Wn. App. 191, 197, 876 P.2d 973 (1994).

In this case, the legal assistant, who was not a member of the bar, was the only person who gave S.M. any substantive legal advice. This hazardous procedure can harm the public as well as the client. *Hunt*, 75 Wn. App. at 803.

> When a person holds himself out to the public as competent to exercise legal judgment, he implicitly represents that he has the technical competence to analyze legal problems and the requisite character qualifications to act in a representative capacity. When such representations are made by persons not adequately trained or regulated, the dangers to the public are manifest.

*Dauphin County Bar Ass'n v. Mazzacaro*, 465 Pa. 545, 551, 351 A.2d 229, 232 (1976). Further, it deprived S.M. of "counsel" as guaranteed by the Sixth Amendment.

This was not a mere technical violation: the legal assistant's advice was both deficient and prejudicial. She misinformed S.M. as to the burden of proof, clearly describing a preponderance of the evidence standard instead of proof beyond a reasonable doubt; she did not inform S.M. that a refusal to testify could not be held against him; she did not read the plea form to S.M. or, apparently, make sure that he read it himself, stating only that he "passed through it," filled it out, and signed it; and she did not discuss other options with S.M., such as negotiating a plea to a lesser offense.

A reasonably competent attorney providing actual and substantial assistance to a client considering a guilty plea would do more. Such an attorney would inform the client about the procedures and consequences of going to trial and about options other than pleading guilty to the charged

crimes. And to aid the client in considering the options, a reasonably competent attorney would help the client evaluate the evidence.

Further, given the circumstances, it appears that these deficiencies prejudiced S.M. The record indicates that S.M.'s motivation to plead guilty was his interest in gaining entry into the SSODA program and that he wanted to participate in the program to obtain the relief from registering as a sex offender that came with successful completion of the program. But there is a reasonable probability that S.M. would not have entered the plea to the charged crimes if he had understood he had the option of a trial where the State had to prove its case beyond a reasonable doubt, where a decision not to testify could not be held against him, and where his attorney might have impeached the victim's credibility. There also is a reasonable probability that S.M. would have elected a different course of action had counsel advised him of the possibility of pursuing a plea bargain to a lesser offense that did not carry a duty to register.

Because counsel's performance was deficient and because there is a reasonable probability that this deficiency prejudiced S.M., we find a violation of S.M.'s Sixth Amendment right to counsel. This defect constitutes a manifest injustice. Consequently, the trial court erred in denying S.M.'s motion to withdraw his plea.

■ S.M. also claims that the legal assistant's counsel was ineffective because she did not fully advise him about the sex offender registration requirements. Counsel has an obligation to inform a defendant of all the direct consequences of a guilty plea. *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980). But a defendant need not be advised of all possible collateral consequences. *Barton*, 93 Wn.2d at 305; *State v. Mace*, 97 Wn.2d 840, 841, 650 P.2d 217 (1982).

■ Because the duty to register as a sex offender does not alter the standard of punishment, it is a collateral, not a direct, consequence of a guilty plea. *State v. Ward*, 123 Wn.2d 488, 513-14, 869 P.2d 1062 (1994). Thus, the consti-

tution does not require that counsel advise his client about this duty. *Ward*, 123 Wn.2d at 513-14. Nor does the record show that the legal assistant affirmatively misinformed S.M. about the sex offender registration requirements. *See Stowe*, 71 Wn. App. at 187 (counsel's performance can fall below an objective standard of reasonableness if he affirmatively misinforms a defendant about collateral consequences).

## II. KNOWING AND VOLUNTARY ENTRY OF PLEA

S.M. further argues that it was error to deny his motion to withdraw his plea because the plea was not knowing and voluntary.

■ Due process guarantees in the federal and state constitutions require that a guilty plea be made intelligently and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *In re Personal Restraint of Montoya*, 109 Wn.2d 270, 277, 744 P.2d 340 (1987); U.S. CONST. amends. V, XIV; CONST. art. I, § 3. Due process principles are offended by the entry of a guilty plea without an affirmative showing in the record that the plea was made intelligently and voluntarily. *Holley*, 75 Wn. App. at 196.

Court rules also set forth requirements regarding guilty pleas. CrR 4.2(d) provides:

> The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

"[F]ailure to comply fully with CrR 4.2 requires that the defendant's guilty plea be set aside and his case remanded so that he may plead anew." *Wood v. Morris*, 87 Wn.2d 501, 511, 554 P.2d 1032 (1976).

■ When a defendant completes a plea statement and

admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary. *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). But a guilty plea is not truly voluntary " 'unless the defendant possesses an understanding of the law in relation to the facts.' " *In re Personal Restraint of Keene*, 95 Wn.2d 203, 209, 622 P.2d 360 (1981) (quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969)).

The judge must determine " 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information.' " *Keene*, 95 Wn.2d at 209 (quoting *McCarthy*, 394 U.S. at 467). Requiring this examination protects a defendant " 'who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.' " *Keene*, 95 Wn.2d at 209 (quoting *McCarthy*, 394 U.S. at 467).

▮▮ To satisfy the CrR 4.2(d) factual basis requirement, there must be sufficient evidence for a jury to conclude that the defendant is guilty and this evidence must be developed on the record at the time the plea is taken; it may not be deferred until sentencing. *Keene*, 95 Wn.2d at 210.

> [T]he factual basis [requirement] may be satisfied by a recitation of facts the prosecutor would prove at trial. Where the prosecutor's factual statement is orally acknowledged by the defendant or where the court orally interrogates the defendant concerning his conduct, the constitutional requirements are satisfied and both society and the defendant are better served. Where, however, the court relies only on the written statement of the defendant on the guilty plea form, it must insure the facts admitted amount to the violation charged. Anything less endangers the finality of the plea.

*In re Personal Restraint of Taylor*, 31 Wn. App. 254, 259, 640 P.2d 737 (1982).

Here, the record does not show that S.M. understood the

law in relation to the facts. At the plea hearing, the trial court asked S.M. whether he knew the meaning of "sexual intercourse" but it did not ask what he thought it meant or inquire into his understanding of the nature of the charges. Thus, as can be inferred from S.M.'s written statement, S.M. may not have understood the law of rape of a child in relation to the facts of his case.

S.M.'s plea statement does not provide the necessary factual basis for the charge of rape of a child. It states only that "[i]n Cowlitz County in the Spring of 1994, I had sexual contact with my Brother who is age 10 in 1994. It happened three times." This statement lacks any indication that S.M. understood that the crime of rape of a child required penetration. Nor does S.M.'s simple "yes" response to the court's oral question about the meaning of sexual intercourse cure this deficiency.

The plea statement is a critical indicator of S.M.'s understanding about the nature of the charges, especially under the circumstances here where the record shows that S.M. did not have the full assistance of counsel before entering his plea. Because the record does not affirmatively show that S.M. understood the law in relation to the facts or entered the plea intelligently and voluntarily, the court violated S.M.'s right to due process when it accepted the plea. Consequently, it erred when it denied his motion to withdraw his plea.

Accordingly, we reverse and remand for trial.

ARMSTRONG, C.J., and MORGAN, J., concur.