# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46873-5-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| MARQUEZE S. APPLETON, | |
| Appellant. | |

BJORGEN, J. — Marqueze Appleton pled guilty to first and second degree assault.  On appeal, he argues that the trial court erred when it accepted his plea because (1) he did not understand the nature of the charges to which he was pleading and (2) no factual basis existed in the record to support his guilty plea to second degree assault.  We disagree and affirm.

## FACTS

On August 19, 2013, police were dispatched to investigate a reported stabbing.  Officers contacted the victim, Roosevelt Ports, who was exiting his vehicle.  The officers "observed a [1/2 inch long] puncture wound to [Ports'] left chest just outside of the nipple."  Clerk's Papers (CP) at 41.  Ports also "had a lump and small cut at the top of his forehead."  CP at 41.  Although police officers attempted to ascertain how Ports was injured, he was "noncommittal and

evasive." CP at 41. Although Ports at first protested medical treatment, he vomited, which prompted him to accept treatment and transportation to the emergency room. Ports' girlfriend, Chrisma Crumpton, stated that she observed Appleton and Ports "tussling in the street." CP at 42. After Ports separated from Appleton, he told Crumpton that he believed he had been stabbed. Crumpton stated that Appleton was upset because he had discovered Ports and Appleton's mother having sex. At this point, because Ports failed to identify Appleton as the person who stabbed him, police did not further pursue the investigation.

On December 17, 2013, police were dispatched to investigate a shooting. This also involved Ports, who reported that he been shot in the back while parked outside a friend's residence. One of the officers "observed a bullet hole on the lower left side of . . . Ports' back." CP at 42. Crumpton, who was also at the scene, said that Appleton had shot Ports. Appleton's sister, who was also at the scene, stated that Ports had told her that Appleton had shot him.

Cherise Matson, who was with Ports when he was shot, stated that a vehicle had parked behind her and Ports' vehicle. She stated that three males exited, one of whom was Appleton. Matson stated that Appleton then approached their vehicle, opened one of the vehicle doors, and threatened to shoot Ports with a pistol. She stated that Appleton told Ports that "he had warned [him] to stay out of his hood and that he was now going to shot [sic] [him]." CP at 42. Matson was forced to leave the vehicle, and as Ports attempted to drive off by himself, Appleton and the other men began shooting at Ports' vehicle. Matson also stated that Ports' and Appleton's relationship had deteriorated because Appleton caught Ports having sex with his mother. Matson identified Appleton as the shooter in a photomontage. At a later interview with Ports, he gave a nearly identical statement of Matson's version of the events, including that Appleton was the one who shot him.

Subsequently, on July 16, 2014, Appleton entered a plea of guilty to one count of first degree assault[1] and one count of second degree assault[2] based on these two incidents. Appleton and his attorney provided completed and signed statements on plea of guilty to both charges. The statements, signed by Appleton, provided:

> On 8/9/13 in Pierce County, WA, I intentionally assaulted Roosevelt Ports thereby recklessly inflicting substantial bodily harm on Roosevelt Ports.

> On 12/17/13 in Pierce County, WA, I, with the intent to inflict great bodily harm, intentionally assault [sic] Roosevelt Ports with a firearm.

CP at 55. The trial court conducted an extensive colloquy with Appleton. As a result, the trial court accepted his plea, finding that Appleton was pleading guilty knowingly, intelligently, and voluntarily and that there was a factual basis to support the first and second degree assault convictions. Appleton appeals.[3]

## ANALYSIS

### I. UNDERSTANDING OF THE NATURE OF THE CHARGES

Appleton first argues that the trial court erred when it accepted his plea because he did not understand the nature of the charges to which he was pleading. We disagree.

---

[1] (1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death. RCW 9A.36.011.

[2] (1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm. RCW 9A.36.021.

[3] Appleton tried to withdraw his guilty plea in a later sentencing hearing, but he does not challenge this on appeal. Rather, he only argues that the trial court's initial acceptance of his guilty plea was error. Even though the State briefs the issues as if Appleton challenged the trial court's decision to disallow withdrawal of his guilty plea, we do not reach that particular ruling.

Before accepting a guilty plea, CrR 4.2(d) first requires a court to "determin[e] that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." This requirement derives from due process, which requires an affirmative showing that a defendant's guilty plea be knowing, intelligent, and voluntary. *State v. Codiga*, 162 Wn.2d 912, 922, 175 P.3d 1082 (2008). Defendants must also understand that they necessarily waive important constitutional rights. *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). A court determines whether a plea is made knowingly, intelligently, and voluntary based on the totality of the circumstances. *Branch*, 129 Wn.2d at 642. On appellate review of a guilty plea, "[t]he State bears the burden of proving the [plea's validity], including the defendant's '[k]nowledge of the direct consequences of the plea.'" *State v. Knotek*, 136 Wn. App. 412, 423, 149 P.3d 676 (2006) (quoting *State v. Ross*, 129 Wn.2d 279, 287, 916 P.2d 405 (1996)).

When a defendant completes a written plea statement and admits to reading, understanding, and signing it, a strong presumption arises that the plea is voluntary. *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). Likewise, an information that notifies the defendant of the nature of the crimes to which he or she is pleading creates a presumption that the plea was knowing, intelligent, and voluntary. *In Re Pers. Restraint of Ness*, 70 Wn. App. 817, 821, 855 P.2d 1191 (1993).

Here, the totality of the circumstances demonstrates that Appleton understood the elements of the charged crimes when he pled guilty. First, Appleton's amended information outlined the elements of first and second degree assault. Second, Appleton acknowledged that he was prepared to plead guilty to the amended information, which alleged first and second degree assault. Third, Appleton agreed that his attorney had explained what pleading guilty meant. The

court then detailed the rights Appleton was giving up, as well as the sentencing consequences, of pleading guilty, and Appleton acknowledged that he understood that he was giving up those rights. Fourth, Appleton acknowledged that no one had threatened or forced him to plead guilty against his will and that it was his decision to plead guilty. RP at 8. Fifth, the court read to Appleton his statements about what happened in this case, which he signed in the statement on plea of guilty and orally agreed to.

Appleton argues that his plea was not done knowingly because "the trial court did not inquire into whether [he] understood what constitutes substantial bodily harm or great bodily harm," elements of second and first degree assault respectively. Br. of Appellant at 7. Appleton cites *State v. Powell*, 29 Wn. App. 163, 627 P.2d 1337 (1981) in support, but the issue in that appeal was whether the trial court had a factual basis to accept the guilty plea, not whether the defendant had entered the plea knowingly, intelligently, and voluntarily. *Powell*, 29 Wn. App. at 166.

Here, Appleton's amended information and his signed statements incorporated in the statement on plea of guilty outlined "substantial bodily harm" and "great bodily harm" as elements of second and first degree assault respectively. The court asked whether Appleton's attorney had explained the legal elements of first and second degree assault, and Appleton replied that he had.[4] Accordingly, we hold that the court properly determined that his guilty pleas to first and second degree assault were made knowingly, intelligently, and voluntarily.

---

[4] Appleton's reliance on *State v. S.M.*, 100 Wn. App. 401, 996 P.2d 1111 (2000) is also unpersuasive. In *S.M.*, the defendant was charged with three counts of first degree rape of a child. *Id.* at 403. The defendant had not discussed the substance of the plea with his defense counsel and the court's colloquy with the defendant only asked if he knew what the word "sexual intercourse" was, whether he knew the victim, and how he pled. *Id.* at 403-04. The defendant's plea statement also did not properly lay out all the elements of first degree rape of a child, particularly the penetration requirement. *Id.* at 415. Unlike *S.M.*, the trial court here specifically

## II. FACTUAL BASIS TO ACCEPT GUILTY PLEA

Appleton argues next that the trial court lacked a proper factual basis to support his plea to second degree assault. We disagree.

CrR 4.2(d)'s second requirement for accepting a guilty plea is that the trial court must be "satisfied that there is a factual basis for the plea." "A factual basis for a plea of guilty exists if there is sufficient evidence for a jury to conclude that the defendant is guilty." *Knotek*, 136 Wn. App. at 429. However, "[t]he trial court need not be convinced of the defendant's guilt beyond a reasonable doubt." *Id.*

Here, the trial court found that there was "a factual basis to support [Appleton's] plea" based on his signed statements in paragraph 11 in the statement on plea of guilty and the declaration for probable cause. CP at 55; RP at 11. The signed statement relevant to second degree assault stated: "On 8/19/13 in Pierce County, WA, I intentionally assaulted Roosevelt Ports, thereby recklessly inflicting substantial bodily harm on Roosevelt Ports." CP at 55. The declaration for probable cause recounts Crumpton's statement that Appleton was upset with Ports, the victim of the second degree assault, because Ports had had sex with Appleton's mother. The declaration also recounts Crumpton's statement that she saw Ports and the defendant "tussling in the street" and that after they separated, Ports asked her to drive because he believed he had been stabbed. CP at 41-42. The officers responding to the incident observed that Ports had a "puncture wound . . . just outside the nipple . . . approximately 1/2 inch long." CP at 41. Based on both the signed statements and the declaration for probable cause, the trial

---

inquired whether Appleton's defense counsel had explained to him the legal elements of first and second degree assault, to which Appleton replied in the affirmative.

court did not err when it found there was a sufficient factual basis for a jury to conclude that the defendant is guilty of second degree assault.

Regardless, Appleton argues that a "puncture wound . . . just outside the nipple . . . approximately 1/2 inch long" does not rise to the level of "substantial bodily harm" to support a factual basis for his second degree assault plea. Br. of Appellant at 9. This argument fails. RCW 9A.04.110(4)(b) defines "[s]ubstantial bodily harm" as "a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." Injuries not as severe as Ports' injuries have been found to be "substantial bodily harm." *State v. McKague*, 172 Wn.2d 802, 806, 262 P.3d 1225 (2011) (facial bruising and swelling as well as lacerations on head, face, and arm); *State v. Hovig*, 149 Wn. App. 1, 13, 202 P.3d 318, 324 (2009) (bite mark on baby's face that caused bruising for seven to fourteen days); *State v. Weber*, 137 Wn. App. 852, 861-62, 155 P.3d 947 (2007) (fractured nose). Ports' puncture wound in his chest and "lump and small cut at the top of his forehead" coupled with evidence that he subsequently vomited from his injuries and had to be transported to the emergency room provide a factual basis from which the trial court could conclude that Appleton inflicted substantial bodily harm on Ports. CP at 41. Accordingly, Appleton's argument fails.

## CONCLUSION

We hold that Appleton's guilty plea was (1) knowing, intelligent, and voluntary; and (2) a

7

factual basis existed for the court to enter the plea.  Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

MELNICK, J.

SUTTON, J.