IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of: | ) ) ) | No. 80985-7-I (Consolidated with case No. 81643-8-I; 82124-5-I) |
| KIER KEAND'E GARDNER, | ) ) | DIVISION ONE |
| Petitioner. | ) ) ) ) ) | UNPUBLISHED OPINION |

HAZELRIGG, J. — Kier Keand'e Gardner[1] seeks review of his motion for a new trial under CrR 7.8, which was transferred to this court as a personal restraint petition. Keand'e alleges ineffective assistance of counsel and errors of the trial court during his sentencing. Because Keand'e fails to meet his burden to demonstrate a constitutional violation causing prejudice or a non-constitutional error resulting in "a complete miscarriage of justice," we deny his personal restraint petition.

FACTS[2]

After a bench trial, Keand'e was convicted of one count each of assault in the second degree, burglary in the second degree, felony violation of a no contact order (VNCO), and malicious mischief in the third degree, all of which were

---

[1] In the interest of consistency, we refer to the Petitioner as Keand'e as in his direct appeal. State v. Gardner, No. 76042-4-I, slip op. at 1, n. 1 (Wash. Ct. App. Apr. 4, 2019) (unpublished) https://www.courts.wa.gov/opinions/pdf/760424.pdf.

[2] Facts are taken from Keand'e's direct appeal in this court. Id.

designated as crimes of domestic violence.[3] Keand'e forced his way into his mother's home, where she and Keand'e's then-girlfriend, C.W., were living. Keand'e appeared in a bedroom holding a kitchen knife with an eight-inch blade, and Keand'e's mother, M.G., positioned herself between Keand'e and C.W. Keand'e pushed M.G. aside and cornered C.W., swinging the knife toward her. The court imposed an exceptional sentence of 130 months in prison on the burglary and standard range sentences of 70 months for the assault, 60 months on the felony VNCO, and 364 days for the gross misdemeanor malicious mischief. The sentences were ordered to run concurrently.

Keand'e filed several motions for a new trial under CrR 7.8. He filed the first on January 3, 2020, and the second on July 2, 2020. On January 8, Keand'e's first motion was transferred to this court, but review was terminated at his request. The second motion was transferred to this court on July 8, 2020. This court consolidated both motions and transferred them back to the superior court with instructions to either grant or deny relief. The superior court considered both petitions and found neither contained a substantial showing that Keand'e was entitled to relief or that an evidentiary hearing was required, and transferred the consolidated petitions back to this court.

---

[3] This court reversed one of the felony VNCO convictions based on the same unit of prosecution.

ANALYSIS

## I.    Ineffective Assistance of Counsel

Keand'e seeks relief based on his argument that he did not receive effective assistance from his defense counsel at sentencing.  He asserts (1) he informed his attorney of several mitigating factors that were not brought up at sentencing, (2) counsel never discussed sentencing strategies prior to the hearing, (3) his attorney did not argue same criminal conduct for past or present convictions, (4) counsel did not verify Keand'e's criminal history or object to the State's failure to present certified copies of prior convictions, (5) his attorney presented a mental health argument for mitigation without Keand'e's consent, (6) counsel did not request a partial confinement or fine as part of the sentence, (7) his attorney presented a kite[4] at sentencing which was confidential attorney/client communication and (8) counsel did not inform Keand'e of his right to allocution.

A defendant is entitled to effective counsel throughout their criminal proceeding, including during the sentencing phase.  State v. Tinkham, 74 Wn. App. 102, 109, 871 P.2d 1127 (1994); Gardner v. Florida, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977).  We review a claim of ineffective assistance of counsel de novo.  State v. S.M., 100 Wn. App. 401, 409, 996 P.2d 1111 (2000).  To succeed on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant.  Id. (quoting State v. Lord, 117 Wn.2d 829, 883, 822

---

[4] A "kite" is a form used in jails and prisons for communication from inmates to counsel or corrections staff.

P.2d 177 (1991) (abrogated by State v. Schierman, 193 Wn.2d 577, 438 P.3d 1063 (2018)). A defendant must meet both prongs to succeed. Id. at 409–10.

To demonstrate deficient performance, a defendant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment [of the United States Constitution]." Id. (quoting Lord, 117 Wn.2d at 409). We give great deference to counsel's performance and employ "a strong presumption of reasonableness." State v. Anderson, 9 Wn. App. 2d 430, 454, 447 P.3d 176 (2019). To overcome this presumption, the defendant must "show the absence of legitimate strategic or tactical reasons for the challenged conduct." Id.

The United States Supreme Court and our State Supreme Court "have given counsel wide latitude to control strategy and tactics." In re Pers. Restraint of Stenson, 142 Wn.2d 710, 733, 16 P.3d 1 (2001). Defense counsel is not obligated to "raise every conceivable point" or "argue every point" that seems important to the defendant. Id. at 735 (quoting State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967)). "[T]he choice of trial tactics, the action to be taken or avoided, and the methodology to be employed must rest in the attorney's judgment." Id. While counsel has a duty to consult with their client regarding "important decisions," this obligation "does not require counsel to obtain the defendant's consent to 'every tactical decision.'" Florida v. Nixon, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) (quoting Taylor v. Illinois, 484 U.S. 400, 417–18, 108 S. Ct. 646 (1988)).

The first six errors alleged by Keand'e are strategic decisions made by counsel during sentencing. While an ideal attorney/client relationship may well involve discussion and even consent from the defendant prior to the implementation of defense tactics, counsel was not required to expressly review them with Keand'e or obtain his consent. Keand'e has not overcome the presumption that counsel's strategic decisions were reasonable. Likewise, Keand'e fails to demonstrate counsel's presentation of a purportedly confidential communication (kite) was unreasonable.[5] First, the kite that was read by counsel explicitly addressed the sentencing judge by name and detailed Keand'e's various concerns with regard to the proceedings over which she had presided. Based on the language of the kite, coupled with the fact that Keand'e refused to appear for sentencing, it was reasonable for counsel to believe the kite was a statement for the court as opposed to protected attorney/client communication.

Counsel may well have determined, based on his own experience, that the issues Keand'e believed to mitigate his culpability would not be persuasive to the court, and that presentation of counsel's concerns about Keand'e's suspected mental health issues was a stronger defense strategy against the exceptional sentence the State sought. Further, the sentence Keand'e wanted his attorney to request, a fine in lieu of confinement, was not one available under the law—so failure to make such a request cannot be deemed deficient performance.[6] As set

---

[5] In fact, many kite forms utilized in jails and prisons expressly note that any communications initiated by the inmate on the kite are not confidential as it is often passed between various corrections personnel before it reaches the intended recipient.

[6] Keand'e had expressly raised this issue prior to trial and the court properly advised him that such a resolution was not an option.

out in section II of this opinion, there was no legal basis for defense counsel to have presented the same criminal conduct analysis Keand'e believes should have been argued at sentencing.

Keand'e alleges counsel failed to verify his criminal history or object to the State's failure to present certified copies of court records in order to prove up his criminal history. The State bears the burden of proving criminal history by a preponderance of the evidence. State v. Mendoza, 165 Wn.2d 913, 920, 205 P.3d 113 (2009) (disapproved of on other grounds by State v. Jones, 182 Wn.2d 1, 338 P.3d 278 (2014)). "Preponderance of the evidence means evidence is more probably true than not true." In re Pers. Restraint of Pugh, 7 Wn. App. 2d 412, 422, 433 P.3d 872 (2019) (quoting In re Welfare of Sego, 82 Wn.2d 736, 739 n. 2, 513 P.2d 831 (1973)). Certified copies of judgment and sentences are but one acceptable method of meeting that standard of proof. In re Pers. Restraint of Aldolph, 170 Wn.2d 556, 566, 243 P.3d 540 (2010). Further, the record demonstrates that counsel did, in fact, note that the State had not provided such documentation for the court, and then couched his argument for the sentencing recommendation of the defense "under, just for argument's sake, the assumption that he has a prior record." The trial court appeared to be satisfied with the State's assertions. Keand'e has failed to demonstrate counsel's performance was deficient.

To demonstrate prejudice, a "defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" S.M., 100 Wn. App. at 410 (quoting Lord, 117 Wn.2d

at 883–84). Keand'e's final allegation as to ineffective assistance, that counsel failed to inform him of his right to allocution, fails on prejudice. Keand'e misconstrues the record by selectively quoting from the transcript of the hearing and seeks to support this claim by alleging "Counsel even said in court, 'I [counsel's name], was not going to call on him [Defendant] for an allocution." The Verbatim Report of Proceedings clearly demonstrates that the complete statement by counsel reads "I was not going to call on him for an allocution <u>although the Court would</u>." The right to allocution at sentencing does not depend on defense counsel "calling" on their client to address the court. That is a right effectuated by the court itself. More critically, Keand'e cannot demonstrate a reasonable probability of a different result had he known of his right to allocution because he refused to attend the sentencing hearing. The record reflects that Keand'e indicated to corrections staff that he would not attend the sentencing proceeding because "his name [was] not going to be represented as Gardner during sentencing. Therefore, he [did] not show up because of that reasoning." Because his claim fails on the prejudice prong, defense counsel was not ineffective.

In his reply, Keand'e asserts that defense counsel's failure to investigate whether the victim was a provoker was ineffective. Generally, this court will not review an issue raised and argued for the first time in a reply brief. <u>Bergerson v. Zurbano</u>, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018); RAP 10.3(c). As such, we decline to reach this issue.

Because Keand'e fails to demonstrate both deficient performance and prejudice as to his assertions here, we conclude that counsel's representation at sentencing was not ineffective.

II.     Sentencing Errors

Keand'e also alleges the trial court abused its discretion at sentencing.  He avers the judge erred when she (1) did not conduct a same criminal conduct analysis on his past convictions sua sponte, (2) did not consider whether any of the present charges could merge, (3) did not consider that one of the victims stated she did not want Keand'e to go to prison for a significant amount of time, (4) did not find that one of the victims provoked  the incident, (5) did not sentence him to a fine in lieu of incarceration, and (6) did not try to find mitigating circumstances after being presented with several.

### A.     Same Criminal Conduct and Merger

Keand'e makes several arguments based on same criminal conduct and merger: the trial court abused its discretion in not considering whether any of the past or present convictions were the same criminal conduct, and did not consider whether two of the present charges could merge.

"The State may bring (and a jury may consider) multiple charges arising from the same criminal conduct," but a court may not "enter multiple convictions for the same offense without offending double jeopardy." State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).  The legislature has the power to authorize cumulative punishments, as applicable here.  Id. at 771.  In RCW 9A.52.050, our

state Legislature explicitly provided that any individual who "in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately." Because our Legislature "explicitly provides that burglary shall be punished separately from any related crime," the trial court did not err in failing to consider whether Keand'e's burglary and assault with a deadly weapon charges could merge. See Freeman, 153 Wn.2d at 772. Further, Keand'e acknowledges in briefing that burglary is subject to this anti-merger statute, but suggests that the judge's discretionary decision to follow the statute was error. One's disagreement with the way a judge exercises their discretion does not render that decision an abuse of discretion.

Our analysis for same criminal conduct is similar. "A court may consider current convictions involving the 'same criminal conduct' as one crime for sentencing purposes." State v. Muñoz-Rivera, 190 Wn. App. 870, 888, 361 P.3d 182 (2015) (quoting RCW 9.94A.589(1)(a)). Offenses constitute the "same criminal conduct" when both offenses "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). The rule is construed narrowly, and all three elements must be present to count as the same criminal conduct. Muñoz-Rivera, 190 Wn. App. at 888. When calculating the offender score, prior convictions are counted separately unless the sentences for those charges were served concurrently and they constitute the same criminal conduct using the same test. State v. Johnson, 180 Wn. App. 92, 100, 320 P.3d 197 (2014) (quoting RCW 9.94A.525(5)(a)(i)).

"We review an offender score calculation de novo but review a 'determination of what constitutes the same criminal conduct [for] abuse of discretion or misapplication of the law.'" Johnson, 180 Wn. App. at 100 (alterations in original) (quoting State v. Mutch, 171 Wn.2d 646, 653, 254 P.3d 803 (2011)).

In May 2009, Keand'e was convicted of: second degree assault-domestic violence under RCW 9A.36.021(1)(c), third degree assault under RCW 9A.36.031(1)(g), and harassment-domestic violence under RCW 9A.46.020(2)(b)(ii). RCW 9A.36.021(1)(c) requires the State to prove the defendant assaulted another with a deadly weapon. RCW 9A.36.031(1)(g) requires the State to prove the defendant assaulted a law enforcement officer or other law enforcement employee while the officer was performing their official duties. RCW 9A.46.020(2)(b)(ii) requires the State to prove the defendant harassed another person by threatening to kill that person or another person. The State correctly notes that the criminal intent for assaulting another is different than threatening to kill a person under our state statutes, and Keand'e makes no allegation that the victim of the assault on a law enforcement officer and of the assault in the second degree domestic violence charges are the same individual. As such, failure to treat these prior convictions as same criminal conduct for purposes of calculating Keand'e's offender score in the instant case was not error, but consistent with the law.

In the present convictions, Keand'e was convicted of burglary, assault with a deadly weapon, felony violation of a no contact order, and malicious mischief. The trial court found he unlawfully entered his mother's residence with the intent

to commit a crime inside, which provided the factual basis for the burglary conviction. The trial court also found he used a knife to assault C.W., which constituted the assault in the second degree-domestic violence. For the VNCO conviction, the trial court found Keand'e violated a no contact order protecting M.G. by knowingly contacting her. Finally, the trial court found Keand'e committed malicious mischief based upon his entry into his mother's home and the damage he caused to her property by entering.

Here, Keand'e's convictions were not the same criminal conduct because they involved different victims. The victim of the burglary was M.G., while the victim of the assault was C.W. The crimes also involved different intents: malicious mischief requires the defendant knowingly and maliciously cause physical damage. RCW 9A.48.090. Burglary requires the defendant unlawfully enter or remain in a building with the intent to commit a crime therein. RCW 9A.52.020. VNCO requires knowingly contacting the protected party. RCW 26.50.110. Assault in the second degree requires that the defendant assaults another with a deadly weapon. RCW 9A.36.021(1)(c). Because the crimes for which Keand'e was convicted required different criminal intents and involved different victims, they do not constitute the same criminal conduct. The court did not err by failing to treat them as such.

In a personal restraint petition, a petitioner must demonstrate a constitutional error giving rise to actual prejudice or a nonconstitutional error "which inherently results in a complete miscarriage of justice." In re Pers. Restraint of Cook 114 Wn.2d 802, 813, 792 P.2d 506 (1990). Because Keand'e has failed to

demonstrate an error by the trial judge causing a complete miscarriage of justice, his petition fails on this argument.

B.    Other Sentencing Errors

Keand'e alleges four other sentencing errors, essentially arguing that the trial court failed to consider several mitigating factors.  Again, to succeed in a personal restraint petition, the petitioner must demonstrate "a complete miscarriage of justice" to prevail.  Id.  A petitioner must include a statement of "the facts upon which the claim of unlawful restraint of petitioner is based and the evidence available to support the factual allegations."  RAP 16.7(a)(2)(i), quoted in, In re Pers. Restraint of Williams, 111 Wn.2d 353, 365, 759 P.2d 436 (1988).

Keand'e's only support for his assertion that the trial court failed to consider mitigating circumstances before it is his own declaration.  The State submitted excerpts of the sentencing hearing, which suggest the trial court considered at least some mitigating circumstances, such as defense counsel's argument for a reduced sentence based on Keand'e's mental health.

Even if the trial court considered the mitigating factors, it is unlikely Keand'e's sentence would have been different.  The trial court imposed an exceptional sentence above the standard range on the burglary charge "[i]n part, because the offender score is extraordinary in this case" pursuant to RCW 9.94A.535(2)(c), often referred to by practitioners as the "free crimes aggravator," and because Keand'e's criminal history suggested that he had committed additional crimes "almost yearly."

Keand'e does not assign error to the trial court's acceptance of his prior convictions, insofar as it accepted the State's presentation of his criminal history without certified copies of all judgments, until his reply. Keand'e asserts that the State's failure to provide sufficient proof of his prior convictions to the trial court by way of certified copies of the judgment and sentence order for each conviction warrants a new sentence. Generally, this court will not review an issue raised and argued for the first time in a reply brief. Bergerson, 6 Wn. App. 2d at 926; RAP 10.3(c). As such, we decline to reach this issue. Because Keand'e cannot demonstrate a non-constitutional error which caused a "complete miscarriage of justice," his petition fails.

III.    Petitioner's Motions

During the pendency of his petition, Keand'e filed numerous motions, several of which were already ruled upon by a Commissioner of this court. He now seeks reconsideration of the Commissioner's rulings. First, Keand'e moved this court for a limiting instruction "foreclosing the new judge from considering a harsher sentence" upon resentencing. The Commissioner denied this motion as premature. Because Keand'e has not prevailed, no resentencing is warranted, and we therefore need not reconsider the Commissioner's ruling.

Next, Keand'e moved this court to order discovery and/or a reference hearing. Specifically, Keand'e seeks fact finding regarding several items he alleges he told his defense counsel prior to sentencing, which were not brought up

at the sentencing hearing. While this court does not find facts[7], even assuming Keand'e's claims are factually true, his ineffective assistance of counsel claims fail on the law. The Commissioner denied this motion as premature. In light of our determination of Keand'e's claims of ineffective assistance of counsel, we deny reconsideration of the Commissioner's ruling on this motion.

Next, Keand'e asked this court to call for additional briefing on the issue of whether the trial court abused its discretion in transferring his CrR 7.8 motion to this court. The Commissioner denied this motion, concluding that the trial court did not abuse its discretion in transferring the CrR 7.8 motion as a personal restraint petition as it found the motion did not contain a substantial showing that Keand'e was entitled to relief or a showing that an evidentiary hearing was required. We deny reconsideration of the Commissioner's ruling.

Keand'e then moved for sanctions against the State under CR 11 and to strike the State's response to his petition. The purpose of sanctions under CR 11 is to deter "baseless filings" that are "not well grounded in fact, or not warranted by existing law or a good faith argument for altering existing law." Bldg. Indus. Ass'n of Wash. v. McCarthy, 152 Wn. App. 720, 745, 218 P.3d 196 (2009). This is a high bar to meet, and a court should only impose sanctions "when it is patently clear that a claim has absolutely no chance of success." Id. (quoting Skimming v. Boxer, 119 Wn. App. 748, 755, 82 P.3d 707 (2004)). Keand'e's motion appears to be based on his disagreement with the State's recitation of the facts and argument in

---

[7] See Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009).

response to his petition. He has not met the high bar required under CR 11, and we deny reconsideration of the Commissioner's ruling on this motion.

Finally, Keand'e moves this court for release should he prevail on his petition. Because he does not prevail on his petition, we need not reconsider the Commissioner's ruling on this motion.

Keand'e has failed to demonstrate any constitutional error causing actual prejudice, or any non-constitutional error causing a complete miscarriage of justice. As such, his personal restraint petition is denied.

WE CONCUR:

- 15 -